**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID P. REDLAWSK,<br>(Address to be filed under seal)<br><br>KEVIN W. PRICE,<br>(Address to be filed under seal)<br><br>*Plaintiffs*,<br><br>v.<br><br>HOWARD W. LUTNICK, in his official capacity as Secretary of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230;<br><br>GEORGE M. COOK, in his official capacity as Deputy Under Secretary of Commerce Performing the Non-Exclusive Functions and Duties of the Director of the U.S. Census Bureau, 4600 Silver Hill Road, Suitland, MD 20746;<br><br>KEVIN F. MCCUMBER, in his official capacity as Clerk of the U.S. House of Representatives, U.S. Capitol, Room H-154, Washington, DC 20515,<br><br>*Defendants.* | Civil Action No. 1:26-cv-03976<br><br>**THREE-JUDGE COURT REQUESTED**<br>(28 U.S.C. § 2284) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**THREE-JUDGE COURT REQUESTED (28 U.S.C. § 2284)**

Plaintiffs David P. Redlawsk and Kevin W. Price, by and through undersigned counsel, bring this action against Defendants in their official capacities and allege as follows:

## INTRODUCTION

1. Delaware voters have far less representation per person in the United States House of Representatives than voters in any other State—barely half that of Montana voters, a State of nearly the same size. Delaware's 990,837 people have one Representative. Montana's 1,085,407

people have two. Delaware voters also receive 23.2% less representation per person than the national average.

2. Delaware's underrepresentation is the result of federal law limiting the House to a size chosen when the Nation had less than one-third its present population. Congress established the 435-seat total by statute in 1911. In 1929, Congress enacted a separate statute that made reapportionment automatic after each census while retaining "the then existing number of Representatives." That provision, as subsequently amended, is now codified at 2 U.S.C. § 2a(a). It requires federal officials to redistribute the existing 435 seats among the States using updated population counts. The population grows, while the statutory apportionment mechanism carries the same total of seats forward. As a result, the 2020 apportionment divided 435 seats among more than 331 million people—more than three-and-a-half times the 92 million Americans counted in the 1910 census, before the current House size was set in 1911—leaving Delaware's 990,837 people with a single Representative.

3. The Constitution requires representation according to population. Article I, Section 2 establishes that requirement, and Section 2 of the Fourteenth Amendment reaffirms it: "Representatives shall be apportioned among the several States according to their respective numbers." Congress must exercise its authority over the size of the House consistently with that command. Its apportionment decisions are subject to judicial review for compliance with the Constitution. *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 456-59 (1992).

4. One additional Delaware Representative would cure Plaintiffs' underrepresentation while preserving every other State's existing seats. Delaware would have two Representatives for its 990,837 people, an average of approximately 495,419 people per Representative. The House

would have 436 Members. The remedy would give Delaware's voters the additional representation their population requires and leave the allocations of the other 49 States intact.

5. The 435-seat limitation imposes a severe and avoidable disparity on Delaware's voters. A second Delaware seat would satisfy the Constitution's requirements for whole seats, State boundaries, and at least one Representative for every State. The statute's age and automatic operation supply no justification for continuing to deny Delaware that representation.

6. Plaintiffs David P. Redlawsk and Kevin W. Price ask the Court to declare the 435-seat limitation unconstitutional as applied to the 2020 apportionment and to afford Congress a definite period to cure the violation. The Court should retain jurisdiction to ensure that Plaintiffs obtain relief. If Congress fails to cure the violation by the deadline, Plaintiffs ask the Court to award Delaware one additional Representative, producing a House of 436 Members while preserving every other State's existing allocation, effective for the 2028 House elections. Expedited consideration will allow time for a decision, congressional action, and orderly implementation of the remedy.

## JURISDICTION AND VENUE

7. This action arises under Article I, Section 2, Clause 3 of the Constitution; Section 2 of the Fourteenth Amendment; and the equal-protection component of the Fifth Amendment's Due Process Clause. Plaintiffs challenge 2 U.S.C. § 2a insofar as its direction to apportion "the then existing number of Representatives" fixes the House at 435 seats for the apportionment following the 2020 census and thereby denies Delaware's voters representation according to population. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

8. Plaintiffs invoke the Court's traditional equitable authority to enjoin federal officers from implementing an unconstitutional statute. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-91

(1949). Plaintiffs seek declaratory relief under 28 U.S.C. § 2201 and further necessary or proper relief under 28 U.S.C. § 2202.

9. Section 702 of Title 5 waives sovereign immunity for Plaintiffs' claims for nonmonetary relief against the Secretary of Commerce and the official performing the functions of the Director of the Census Bureau. The waiver applies to nonstatutory review of federal agency action. *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328-29 (D.C. Cir. 1996). Plaintiffs seek relief against the Clerk under the rule permitting suits to restrain federal officers from implementing unconstitutional statutes. *Larson*, 337 U.S. at 689-91. The challenged certification function under 2 U.S.C. § 2a(b) implements the apportionment outside the House's legislative proceedings. Judicial review of that conduct comports with the distinction between legislative acts and the conduct of House employees under *Powell v. McCormack*, 395 U.S. 486, 503-06 (1969).

10. Venue is proper under 28 U.S.C. § 1391(e)(1)(A) and (B). The Secretary of Commerce resides in this District in his official capacity. A substantial part of the events giving rise to Plaintiffs' claims occurred here, including the Secretary's delivery of the apportionment counts to the President and the President's transmission of the apportionment statement to Congress.

## THREE-JUDGE COURT

11. Plaintiffs request a three-judge district court under 28 U.S.C. § 2284(a). This action challenges the constitutionality of the apportionment of congressional districts. The challenged allocation assigns Delaware a single at-large district and determines the number of districts into which each State must be divided under 2 U.S.C. § 2c.

12. Section 2284 requires a three-judge court to hear a covered constitutional challenge that presents a substantial federal question. *Shapiro v. McManus*, 577 U.S. 39, 44-46 (2015). Plaintiffs' claims rest on the Constitution's population requirement, the Supreme Court's

recognition that congressional apportionment decisions are judicially reviewable, and official population and apportionment data. Plaintiffs request notification to the Chief Judge of the United States Court of Appeals for the District of Columbia Circuit so that the additional judges may be designated under § 2284(b)(1). Plaintiffs are filing the application and memorandum required by LCvR 9.1.

**PARTIES**

13. Plaintiff David P. Redlawsk is a citizen of the United States and a registered voter in the State of Delaware. He resides in Delaware's single, at-large congressional district, has voted in elections for the House of Representatives, and intends to continue voting in those elections, including the elections of November 2028 and November 2030. Plaintiff Redlawsk's residential address will be supplied by notice filed under seal in accordance with LCvR 5.1(c)(1).

14. Plaintiff Kevin W. Price is a citizen of the United States and a registered voter in the State of Delaware. He resides in Delaware's single, at-large congressional district, has voted in elections for the House of Representatives, and intends to continue voting in those elections, including the elections of November 2028 and November 2030. Plaintiff Price's residential address will be supplied by notice filed under seal in accordance with LCvR 5.1(c)(1).

15. Defendant Howard W. Lutnick is the Secretary of Commerce and is sued in his official capacity. Under 13 U.S.C. § 141(a) and (b), the Secretary conducts the decennial census and reports to the President "[t]he tabulation of total population by States . . . as required for the apportionment of Representatives in Congress among the several States." The Secretary supervises the Census Bureau's preparation of the apportionment population counts and the equal-proportions calculation that implements the 435-seat limitation.

16. Defendant George M. Cook is the Deputy Under Secretary of Commerce performing the non-exclusive functions and duties of the Director of the Census Bureau, and is

sued in that official capacity. The Census Bureau, under the Secretary's supervision, prepares the apportionment population tabulations and performs the equal-proportions calculation that allocates the "then existing number of Representatives" among the States.

17. Defendant Kevin F. McCumber is the Clerk of the United States House of Representatives and is sued in his official capacity. Under 2 U.S.C. § 2a(b), within fifteen calendar days after receiving the President's apportionment statement, the Clerk must "send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section." The Clerk's certificate is the instrument by which the apportionment is communicated to and implemented by the States. The function is ministerial, is performed outside the House's legislative proceedings, and is the final federal step in the implementation of the limitation Plaintiffs challenge.

**STANDING**

18. Plaintiffs suffer a concrete and particularized injury from the dilution of their representation in the House. Both live and vote in Delaware's single congressional district, where one Representative serves 990,837 people under the 2020 apportionment. Each Plaintiff receives less representation per person than voters in every other State. Dilution of a voter's representation is a personal injury. *Wesberry v. Sanders*, 376 U.S. 1, 5-8 (1964); *Michel v. Anderson*, 14 F.3d 623, 625-28 (D.C. Cir. 1994).

19. Plaintiffs seek relief for the unequal representation imposed on their own district. Their injury follows directly from Delaware's allocation of one seat. Awarding Delaware a second Representative would redress that injury by doubling the representation available to the people who now share its single seat, including both Plaintiffs. The requested relief addresses each Plaintiff's individual representational injury. *Michel*, 14 F.3d at 625-28.

20. Plaintiffs' injury is fairly traceable to Defendants. The Secretary and the Census Bureau calculated the 2020 apportionment using 435 as the House size; the President transmitted that calculation to Congress; and the Clerk certified the resulting entitlement of one Representative to the Governor of Delaware. Those actions implemented the limitation Plaintiffs challenge, and the allocation they produced governs every House election through 2030.

21. The requested judgment would redress Plaintiffs' injury by establishing Delaware's entitlement to a second Representative if Congress fails to cure the violation. The judgment would direct the Secretary and the official performing the Census Director's functions to prepare apportionment materials reflecting a 436-member House, two Delaware Representatives, and the existing allocations of the other 49 States. The Clerk would certify Delaware's entitlement to two Representatives pursuant to the Court's order. Those duties would implement the judicial award of the additional seat.

## FACTUAL ALLEGATIONS

### A. The Constitution Requires Representation According to Population

22. Article I, Section 2, Clause 3 provides that "Representatives . . . shall be apportioned among the several States which may be included within this Union, according to their respective Numbers," determined by an "actual Enumeration" conducted every ten years. The same clause provides that "[t]he Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative."

23. Section 2 of the Fourteenth Amendment reaffirmed the population requirement: "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed." Representatives serve the entire population, including people who cannot vote. *Evenwel v. Abbott*, 578 U.S. 54, 74 (2016).

24. The Great Compromise established equal representation for the States in the Senate and representation by population in the House. James Wilson explained that "equal numbers of people ought to have an equal no. of representatives." *Wesberry*, 376 U.S. at 11 (quoting 1 *The Records of the Federal Convention of 1787*, at 180 (Max Farrand ed., 1911)). The Supreme Court has recognized equal representation for equal numbers of people as the principle embodied in that compromise. *Id.* at 14.

25. The founding generation expected the House to grow with the population. On the Convention's final day, George Washington supported changing the proposed ceiling from one Representative for every 40,000 people to one for every 30,000, allowing a larger House. Madison's Notes of Debates in the Federal Convention, Sept. 17, 1787. Madison later explained that the decennial census would both readjust the apportionment and increase the number of Representatives as population grew. *The Federalist No. 58*. In 1789, the First Congress proposed an amendment that would have required the House to grow to at least 200 Members as the population increased. Proposed Amendments to the Constitution, art. 1, Sept. 25, 1789.

26. The Constitution gives Congress authority to set the number of Representatives within express limits. Every State must receive at least one seat, and the total may not exceed one Representative for every 30,000 people. Within those limits, Congress remains bound by the requirement to apportion representation according to population.

**B. Congress Repeatedly Enlarged the House Through 1911**

27. Congress enlarged the House following nearly every census from 1790 through 1910. The Constitution initially assigned 65 seats. Congress increased the total to 105 after the 1790 census, 213 after 1820, 292 after 1870, and 386 after 1900. The 1911 legislation provided for 433 seats, with an additional seat each for Arizona and New Mexico upon admission, bringing the total to 435. Enlargement allowed the House to accommodate population growth while

preserving existing representation. The principal exception was the 1842 apportionment, which reduced the total to 223.

28. Delaware's population was close to the national average per Representative when Congress adopted the 1911 apportionment. The Census Bureau's historical table reports a national average of 210,328 people per seat for that apportionment and a Delaware population of 202,322, with one seat. Delaware's apportionment population has since grown almost fivefold, to 990,837, while its allocation remains one Representative.

### C. The Apportionment Statute Carries the Existing House Size Forward

29. Congress failed to reapportion the House after the 1920 census. The census recorded an urban majority for the first time, and proposed reapportionments threatened the influence of rural districts and States that would lose seats. Congress remained deadlocked throughout the decade. The House elected in 1930 was still apportioned using the 1910 census.

30. Congress established an automatic apportionment mechanism in 1929 to prevent another failure to reapportion. The statute directed future apportionments to allocate "the then existing number of Representatives," which was 435. In 1941, Congress prescribed the method of equal proportions for future apportionments. Congress selected that formula after years of study and debate, including consideration of recommendations from the National Academy of Sciences. *Montana*, 503 U.S. at 450-52, 465-66.

31. The statute now provides that, after each census, the President shall transmit to Congress a statement of each State's population "and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions." 2 U.S.C. § 2a(a). Each State is then "entitled . . . to the number of Representatives shown in the statement" until the next apportionment. *Id.* § 2a(b). Apart from a temporary increase to 437 Members upon the admission

of Alaska and Hawaii, which expired with the apportionment following the 1960 census, the House has had 435 voting Members since 1913.

32. The statute carries the existing House size into each new apportionment automatically. It requires a new count of the population but retains the prior total of seats unless Congress changes that total. The 2020 apportionment consequently distributed 435 seats among more than 331 million people, using the permanent House size established in 1911.

33. The national average population per Representative has risen from 210,328 under the 1911 apportionment to 761,169 under the 2020 apportionment. Each Representative now serves, on average, more than three and a half times as many people.

**D. Delaware's Voters Have the Least Representation per Person**

34. On April 26, 2021, the Secretary delivered the 2020 apportionment population counts and the calculation allocating 435 seats to the President. The President transmitted them to Congress that day. H.R. Doc. No. 117-32 (2021). The transmitted table expressly identifies 435 as the House size used in the calculation. The Clerk thereafter certified Delaware's entitlement to one Representative. That allocation governed the 2022 and 2024 House elections and governs the 2026, 2028, and 2030 elections unless changed.

35. The 2020 apportionment population of the fifty States, including overseas federal personnel and their dependents allocated to their home States, is 331,108,434. At 435 seats, the national average is 761,169 persons per Representative. The population comparisons in this Complaint use the official apportionment populations reported by the Census Bureau.

36. Delaware's apportionment population is 990,837. Its one Representative serves 30.2 percent more people than the national average. No State's voters are represented at a lower rate. Delaware contains 0.299 percent of the Nation's apportionment population and holds 0.230 percent of the seats in the House.

37. Montana's apportionment population is 1,085,407, only 94,570 more than Delaware's. Montana has two Representatives, averaging 542,704 people per seat, 28.7 percent below the national average. A Delaware voter receives 54.8 percent of the representation per person that a Montana voter receives. Delaware's population per Representative is 1.826 times Montana's statewide average, the largest disparity between any two States.

38. Wyoming's apportionment population is 577,719. Wyoming and Delaware each have one Representative, although Delaware has 413,118 more people, a difference of 71.5 percent. A Delaware voter receives 58.3 percent of the representation per person that a Wyoming voter receives. Rhode Island, with 1,098,163 people, has two Representatives, averaging 549,082 people per seat.

39. Plaintiffs experience the disparity throughout each congressional term. Their single Representative serves nearly one million constituents, while Montana's two Representatives together serve a population only 94,570 larger. Delaware's allocation gives that entire population one Member's vote in the House and one Member responsible for representation, constituent service, and oversight. Each election under the challenged allocation continues Plaintiffs' underrepresentation for another term.

40. Equal representation protects voters of every political party. Delaware voters receive the same diminished representation whether they elect a Democrat, a Republican, or an independent. Plaintiffs seek an apportionment that gives their population its constitutionally required representation regardless of the election's partisan result.

### E. The 435-Seat Limitation Causes Plaintiffs' Underrepresentation

41. The statutory limitation prevents Delaware's population from receiving the additional representation it requires. The equal-proportions formula assigns each State at least one seat and distributes the remaining seats by population, stopping when the total reaches 435. The

resulting allocation gives Delaware one Representative for 990,837 people. Congress's choice to retain that total causes the severe dilution of Plaintiffs' representation. The Constitution permits an additional Delaware seat, and the existing census supplies the population figures necessary to establish and remedy Plaintiffs' injury.

**F. One Additional Delaware Seat Would Cure Plaintiffs' Injury**

42. Awarding Delaware a second Representative would cure the underrepresentation imposed on Plaintiffs by the 435-seat limitation. Delaware would have two seats for the same certified population, averaging approximately 495,419 people per Representative. The House would comprise 436 Members, and all 49 other States would retain their existing allocations. The additional seat would give Plaintiffs and their fellow Delaware voters twice their present representation.

43. A second Delaware seat is the smallest increase in representation that would cure Plaintiffs' injury. Representatives hold whole seats, so the Court can provide the additional representation by awarding one seat to Delaware. Continuing to allot Delaware only one Representative would leave Plaintiffs' dilution in place. The requested judgment would establish Delaware's entitlement to the additional seat and preserve every other State's current allocation.

**G. The Disparity Lacks a Sufficient Governmental Justification**

44. The 435-seat limitation substantially dilutes Delaware's representation without a sufficient governmental justification. The number was established for a population less than one-third the size of the population it now governs. A second Delaware Representative would remedy Plaintiffs' injury while satisfying the Constitution's express requirements and preserving every other State's allocation.

45. Administrative convenience and institutional practice cannot justify the severe, avoidable inequality imposed on Delaware's voters. Population equality is a constitutional

requirement in congressional representation. *Wesberry*, 376 U.S. at 7-8, 14. An additional Delaware seat would use the existing census, respect State boundaries, and preserve each State's present seats. Prospective implementation would allow time for the federal certifications and Delaware districting necessary to make the remedy effective.

46. The House can accommodate one additional Member. Congress controls the House's procedures, committees, staffing, and facilities and has repeatedly accommodated increases in membership. The administrative arrangements necessary for a 436-member House do not justify continuing to deny Plaintiffs the representation their population requires.

**H. Congress's Apportionment Decisions Must Comply With the Constitution**

47. The Constitution's population requirement supplies a judicially enforceable limit on Congress's apportionment authority. In *Montana*, the Supreme Court unanimously held that the political-question doctrine did not bar review of the allocation of Representatives among the States. 503 U.S. at 456-59. The Court explained that the judiciary must determine whether Congress exercised its authority within the Constitution's limits. *Id.* at 459.

48. *Montana* upheld Congress's selection of the method of equal proportions to allocate a House of fixed size. The Court considered the competing formulas, the history of Congress's choice, and the constitutional constraints on interstate apportionment. *Id.* at 459-66. The Court also recognized that a statutory apportionment rule remains subject to constitutional challenge as it continues to operate. *Id.* at 465.

49. Plaintiffs challenge the 435-seat limitation as applied to Delaware's representation under the 2020 apportionment. The limitation leaves Delaware voters with barely more than half the representation per person that Montana voters receive. Awarding Delaware one additional seat would cure that injury while preserving the other States' allocations. The challenged limitation must comply with the constitutional population requirement in the apportionment it now governs.

50. The Court can adjudicate Plaintiffs' claim by applying the Constitution's population requirement to the official census and apportionment data. Those figures establish Delaware's representation relative to other States and show the effect of awarding Delaware a second seat. The Court can determine whether the severe dilution of Plaintiffs' representation is justified when that injury can be cured through the specific relief requested here.

**I. Prospective Relief Can Remedy Plaintiffs' Continuing Injury**

51. The 2020 apportionment continues to govern Plaintiffs' representation through the November 2030 House election. Unless remedied, Delaware's allocation will dilute Plaintiffs' representation in each remaining election under that apportionment and throughout the resulting congressional terms. The statute also carries the existing House size into the next decennial apportionment unless Congress changes it.

52. Expedited consideration will permit effective relief during the current apportionment period. The schedule must allow time for adjudication, Congress's opportunity to cure, any necessary implementing orders, Delaware districting, and election administration. Plaintiffs seek prompt resolution so that those steps can be completed before the affected election.

53. Plaintiffs seek prospective relief for the next regular House election governed by the 2020 apportionment that the Court finds administrable after judgment. The remedy should preserve the November 3, 2026 election and the terms of the Representatives elected in it while securing Delaware's additional representation for a later election.

54. The Court's equitable judgment would establish and implement Delaware's entitlement to the additional seat if Congress fails to cure the violation. The judgment would require the Secretary and the official performing the Census Director's functions to prepare and provide to the Court, Congress, and the Clerk apportionment materials reflecting the additional Delaware Representative. The Clerk would then certify Delaware's entitlement to two

Representatives to Delaware's executive. Those implementing duties would arise from the Court's remedial order.

55. Congress should receive the first opportunity to cure the violation after the Court declares the 435-seat limitation unconstitutional as applied. Plaintiffs request a stay until a definite deadline and retention of jurisdiction to determine whether Congress's response cures their injury. That sequence follows the Supreme Court's approach of allowing the legislature a reasonable opportunity to remedy an unconstitutional apportionment before imposing a judicial remedy. *Reynolds v. Sims*, 377 U.S. 533, 586 (1964).

56. If Congress fails to cure the violation by the deadline, the Court should award Delaware one additional Representative. The judgment would establish a House of 436 Members, allot two seats to Delaware, and preserve every other State's existing allocation. The award would rest on the Court's equitable authority to remedy the constitutional injury established by Plaintiffs. The additional seat would be assigned directly to Delaware under that judgment.

57. Delaware must establish two single-member congressional districts to implement its entitlement to two Representatives. 2 U.S.C. § 2c. A schedule fixed sufficiently in advance of the affected election can accommodate the federal implementing orders, Delaware's districting, candidate qualification, and election administration. Plaintiffs will propose that schedule and seek joinder of any additional parties necessary to implement relief directed to them.

58. The additional Delaware seat should take effect for the next regular House election governed by the 2020 apportionment that the Court finds administrable after judgment. A prospective effective date would permit congressional action, appellate review, and the federal and state steps necessary to implement the remedy while preserving the November 3, 2026 election and the resulting congressional terms.

## CLAIMS FOR RELIEF

### COUNT I
### Article I, Section 2, Clause 1 (One Person, One Vote)

59. Plaintiffs incorporate the preceding paragraphs.

60. Article I, Section 2, Clause 1 provides that the House "shall be composed of Members chosen every second Year by the People of the several States." That command means that "as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's." *Wesberry,* 376 U.S. at 7-8. It embodies the principle of "one person, one vote" in elections to the House. *See id.* at 18. Equal representation for equal numbers of people is the constitutional principle governing the House. *Id.* at 14. Congress must exercise its apportionment authority consistently with that principle. *Montana*, 503 U.S. at 459. A claim that a law debases the weight of a citizen's vote for Representatives is justiciable. *Wesberry*, 376 U.S. at 5-7; *Baker v. Carr*, 369 U.S. 186, 237 (1962).

61. The 435-seat limitation, as applied to the 2020 apportionment, dilutes Plaintiffs' votes and representation. Each Plaintiff shares a single Representative with all 990,837 people in Delaware. Delaware voters receive less representation per person than voters in any other State, including only 54.8 percent of the representation per person received by Montana voters and 58.3 percent of that received by Wyoming voters. Awarding Delaware a second Representative would cure Plaintiffs' underrepresentation while satisfying the Constitution's express requirements and preserving every other State's existing allocation.

62. The resulting dilution of Plaintiffs' representation lacks a sufficient governmental justification. The statute perpetuates that disparity by carrying the 435-seat total into an apportionment for more than 331 million people. Congress's authority to select the size of the

House must be exercised consistently with the constitutional requirement of equal representation for equal numbers of people.

63. Defendants' implementation of the limitation violates Plaintiffs' right under Article I, Section 2, Clause 1 to equal representation for equal numbers of people. Plaintiffs are entitled to a declaration of the violation and an opportunity for Congress to cure it by a definite deadline. If Congress fails to do so, Plaintiffs are entitled to prospective injunctive relief awarding Delaware one additional Representative in a House of 436 Members and preserving every other State's existing allocation.

**COUNT II**
**Fifth Amendment Equal Protection: One Person, One Vote (Pleaded in the Alternative)**

64. Plaintiffs incorporate the preceding paragraphs.

65. The Due Process Clause of the Fifth Amendment contains an equal-protection guarantee applicable to the Federal Government. *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954). The right to vote, and the right to have one's vote and representation weighted equally with those of other citizens, is fundamental. *Reynolds*, 377 U.S. at 561-62. The "conception of political equality" that right embodies "can mean only one thing—one person, one vote." *Id.* at 558 (quoting *Gray v. Sanders*, 372 U.S. 368, 381 (1963)).

66. In the alternative to Count I, the 435-seat limitation, as applied to the 2020 apportionment, treats Plaintiffs unequally on the basis of their State of residence by giving them substantially less representation per person than voters in every other State. The Federal Government perpetuates that disparity although awarding Delaware one additional Representative would cure Plaintiffs' injury while honoring the Constitution's express requirements and preserving every other State's allocation. The disparity is not necessary to serve any legitimate governmental objective and bears no adequate relationship to one.

67. Defendants' implementation of the limitation violates Plaintiffs' right to equal protection under the Fifth Amendment. Plaintiffs seek a declaration of the violation, a definite period for Congress to cure it, and, if Congress fails to do so, prospective injunctive relief awarding Delaware one additional Representative in a House of 436 Members while preserving every other State's existing allocation.

**COUNT III**
**Article I, Section 2, Clause 3, and Section 2 of the Fourteenth Amendment: Apportionment Among the States "According to Their Respective Numbers" (Pleaded in the Alternative)**

68. Plaintiffs incorporate the preceding paragraphs.

69. Article I, Section 2, Clause 3 commands that Representatives "shall be apportioned among the several States . . . according to their respective Numbers." Section 2 of the Fourteenth Amendment modified that provision and now states the command: "Representatives shall be apportioned among the several States according to their respective numbers." *See Montana*, 503 U.S. at 444 n.1. The requirement governs the allocation of House seats among the States, so that "comparative state political power in the House would reflect comparative population." *Utah v. Evans*, 536 U.S. 452, 477 (2002). Congress must exercise its apportionment authority within that requirement, and its compliance is subject to judicial review. *Montana*, 503 U.S. at 459.

70. In the alternative to Counts I and II, the 435-seat limitation, as applied to the 2020 apportionment, does not apportion Representatives to Delaware according to its numbers. Delaware contains 0.299 percent of the Nation's apportionment population but holds 0.230 percent of the seats in the House, about 77 percent of its proportional share. No State holds a smaller share

of the House relative to its share of the Nation's population. Montana, with only 94,570 more people, holds twice as many seats.

71. The Constitution's express constraints do not compel that departure. Each State must receive at least one Representative, and seats must be whole, but neither requirement fixes Delaware's allocation at one seat for 990,837 people. Delaware's allocation results from Congress's retention of a House size fixed in 1911, when the Nation had less than one-third its present population. That retention lacks a sufficient justification.

72. Defendants' implementation of the limitation violates the requirement of Article I, Section 2, Clause 3, and Section 2 of the Fourteenth Amendment that Representatives be apportioned among the States according to their respective numbers. Plaintiffs are entitled to a declaration of the violation and an opportunity for Congress to cure it by a definite deadline. If Congress fails to do so, Plaintiffs are entitled to prospective injunctive relief awarding Delaware one additional Representative in a House of 436 Members and preserving every other State's existing allocation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Convene a district court of three judges under 28 U.S.C. § 2284;

B. Expedite consideration of this action;

C. Declare that the 435-seat limitation in 2 U.S.C. § 2a, as applied to the 2020 apportionment, violates the guarantee of one person, one vote secured by Article I, Section 2, Clause 1 of the Constitution or, in the alternative, the equal-protection guarantee of the Fifth Amendment or the requirement of Article I, Section 2, Clause 3 and Section 2 of the Fourteenth Amendment that Representatives be apportioned among the States according to their respective numbers;

D. Declare that continuing to allot Delaware only one Representative under the 2020 apportionment leaves Plaintiffs' constitutional injury unremedied and that a second Delaware Representative is the minimum relief sufficient to cure that injury;

E. Stay the operative effect of the relief until a definite deadline that affords Congress the first opportunity to cure the violation, and retain jurisdiction to determine whether Congress's response provides a sufficient cure;

F. If Congress fails to cure the violation by that deadline, enjoin Defendants from implementing, certifying, or giving continuing effect to an allocation of only one Representative to Delaware under the 2020 apportionment, subject to the prospective effective date established by the Court;

G. If Congress fails to cure the violation by that deadline, order that the House comprise 436 Members and award the single additional Representative to Delaware, giving Delaware two Representatives while preserving every other State's existing allocation;

H. In that event, order the Secretary of Commerce and the official performing the functions of the Director of the Census Bureau to prepare and provide to the Court, Congress, and the Clerk apportionment materials reflecting the additional Delaware Representative, pursuant to the Court's equitable judgment;

I. In that event, order the Clerk of the House to certify to Delaware's executive that Delaware is entitled to two Representatives, pursuant to the Court's equitable judgment;

J. Make the additional Delaware Representative effective for the next regular House election governed by the 2020 apportionment that the Court finds administrable

after judgment, allowing sufficient time for Delaware districting under 2 U.S.C. § 2c and election administration;

K. Preserve the existing allocation for the November 3, 2026 election and the terms of the Representatives elected in it;

L. Retain jurisdiction to enforce the judgment and enter the orders necessary to implement the relief requested; and

M. Award Plaintiffs their costs.

Dated: November 11, 2026

Respectfully submitted,

*/s/ Andrew T. Tutt*
Andrew T. Tutt (D.C. Bar No. 1026916)
R. Stanton Jones (D.C. Bar No. 987088)
TRIAL LAWYERS FOR JUSTICE
421 W. Water Street
Decorah, IA 52101
Telephone: (202) 490-7080 (Tutt)
Telephone: (202) 550-3260 (Jones)
andrew@tl4j.com
stanton@tl4j.com

*Counsel for Plaintiffs David P. Redlawsk and Kevin W. Price*